UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE
2020 OCT 22  AM 10: 26

| | |
|---|---|
| *Yaya Jallow*,<br>  Plaintiff,<br>v.<br>*The City of New York,*<br>*The Salvation Army of Greater New York,*<br>*Grand Central Neighborhood Social Services, and*<br>*Urban Pathway,*<br>  Defendants. | Case No.<br><br>Amended Complaint |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### *I. Introduction*

1. The Plaintiff, Yaya Jallow, in proper person is filing this complaint and respectfully requesting a declaratory and injunctive relief against the aforementioned Defendants for violations of The Plaintiff's 5th & 14th Amendments & Civil Rights. The Plaintiff alleges the following:
   a) After being unjustly transferred to an under-facilitated & dangerous "disciplinary shelter" by a couple of The Defendants and suffering through the accompanied discrimination campaign The Plaintiff would then go onward to file a formal complaint of discrimination against those Defendants with the New York State Division of Human Rights.
   b) After being forced outside as a form of retaliation for filing his complaint and again every time he would file another complaint for their retaliatory actions The Plaintiff would go onward to attempt to resolve his complaints with the Defendants, even providing enough ample time for the Defendants to attempt to resolve his complaints with them but instead the Defendants would brush them off and instead once again retaliate against him.
   c) From the moment The Plaintiff commenced his litigations against the Defendants until the filing of this complaint the Defendants would attempt every conceivable way possible to disenfranchise The Plaintiff and in an attempt to kill him by forcing him, on multiple occasions, outside during a time when the temperature was near or at freezing in what can only be described as a complete disregard for The Plaintiff's life and well-being. Through their Staffs' actions and their own willful ignorance of The Plaintiff's multiple complaints and notices detailing what was occurring The Defendants are guilty, in The Plaintiff's word, of attempting to disenfranchise and destitute The Plaintiff in their malicious callous attempts to resolve their dispute with The Plaintiff.

## II. Jurisdiction & Venue

2. The Plaintiff brings this action pursuant to 42 U.S.C. §1983 for violations of The Plaintiff's Rights under the Fifth and Fourteenth Amendments of the United States Constitution & The Civil Rights Acts.
3. The case presents a federal question within This Court's jurisdiction under Article III of the United States Constitution and 28 U.S.C. §1331, §1343, §1332.
    a) *Question: "Did The Defendants violate The Plaintiff's Civil & Amendment Rights by refusing him entrance & his possessions/property after already refusing him services & retaliating against him for filing a formal complaint against them for discriminating against him on the basis of their perception of his protected characteristics?"*
4. Declaratory relief is authorized by 28 U.S.C. §2201 and §2202.
5. Injunctive relief authorized by 27 U.S.C 122a.
6. Venue is proper in This Court under 28 U.S.C. §1391 because one or both parties reside in this district and a substantial part of the events given rise to this claim occurred in this district.
7. The Plaintiff does not seek a jury trial and designates Manhattan as the place for trial.

## III. Causes of Action
### *Violation of 5th & 14th Amendment Rights (42 U.S.C. §1983)*

8. The Plaintiff restates and reincorporates all previous paragraphs of this complaint.
9. The Fifth and Fourteenth Amendment prohibits any official of government from depriving any person of life, liberty, or property without due process.
    *a)* Due to the complex nature of governmental relationships and workplace associations it can be safe to treat all of Defendant City of New York's personnel as one governmental agency in coordination with The State of New York's governmental body, an assumption that will hopefully later become a concrete known fact.
10. After filing a complaint against a couple of The Defendants for discriminating against him due to The Defendants' perception of The Plaintiff's national origin, race, color, and ancestry, those very same parties would go onward to sanction a retaliating campaign against The Plaintiff along with the remaining Defendants to refuse The Plaintiff housing service and force The Plaintiff out onto the street in a feeble attempt to force The Plaintiff to either forgo his pending litigation actions against them or either die.

### *Violation of Civil Rights (18 U.S.C. §241, §249)*

11. The Plaintiff restates and reincorporates all previous paragraphs of this complaint.
12. In accordance with The Civil Rights Act it is unlawful to discriminate against any person because of their protected characteristic in areas of public accommodation and in any federally assisted program(s). The Plaintiff was discriminated against on the basis of his race, ancestry, & national origin and The Defendants' perception of it.
13. The Plaintiff's grievances/complaints were never adequately addressed and possibly due to The Plaintiff's protected characteristic he was never believed nor afforded the option to properly/adequately resolve his grievances/complaints. When it became apparent The Plaintiff was on track to seek adequate relief from This Court The Defendants would go onward to try every possibly conceivable way of disenfranchising The Plaintiff.

### *Obstruction of Proceedings Before Department, Agencies ...(18 U.S.C. §1505)*
14. The Plaintiff restates and reincorporates all previous paragraphs of this complaint.
15. During the course of the events that will be listed later on The Plaintiff had several governmental "complaints" attempting to address all the illegal and immoral acts he was the unfortunate victim of, all which in a blatant show of corruption & obstructionism, and in the face of an abundance of evidence and exhibits stating the contrary, had the "complaints" stalled & ruled against him. The Defendants' personnel felt the need to do everything in their power to obstruct & hinder the investigations and course of the complaints. The Plaintiff believes this intention was one of the many driving forces for all the illegal and immoral acts that were committed against him.

### *False Information & Hoaxes (18 U.S.C. §1038)*
16. The Plaintiff restates and reincorporates all previous paragraphs of this complaint.
17. Despite The Plaintiff's countless attempts to set the record straight The Defendants and their personnel would go to the fullest extent to deliberately, knowingly, & willfully spread false, fraudulent, inaccurate, malicious, slanderous, and categorically untrue information about The Plaintiff from the very beginning, when The Plaintiff was told to his face that the staff were not required to provide him with any help let alone services, to the end when the Staff would lie to the New York State Division of Human Rights about The Plaintiff, and the Division of Human Rights would maliciously believe them despite countless evidence stating the contrary.
18. The Defendant's personnel would go to the fullest extent to spread their fictitious believes as it related to The Plaintiff in face of countless facts stating the contrary.

### *Fraud In Connection With Identification Documents(18 U.S.C. §1028)*
19. The Plaintiff restates and reincorporates all previous paragraphs of this complaint.
20. The Defendant's personnel would attempt to kick The Plaintiff out and hold onto The Plaintiff's birth certificate along with copies of The Plaintiff's State ID and Social Security card.
21. The Defendant's personnel would attempt to ignores The Plaintiff's identify documents in an attempt to paint The Plaintiff as an illegal alien.

### *Amount In Controversy (28 U.S.C. §1332)*
22. The Plaintiff restates and reincorporates all previous paragraphs of this complaint.
23. The amount in monetary relief requested meets with the required threshold for This Court and the actual amount in damages surpasses the maximum of most court this litigation would also fall under the jurisdiction of.

## IV. Parties
24. The Plaintiff, Yaya Jallow, (hereinafter "The Plaintiff", "Plaintiff") is an individual who is currently a resident of the State of New York & the City of New York and was also a client at the Kingsboro Men's shelter operated by Defendant The Salvation Army of Greater New York in-conjunction with Defendant City of New York's Department of Homeless Services under the oversight and supervisory jurisdiction of Defendant City of New York's

Department of Social Services.
25. The Defendants:
   a) The Defendant, City of New York, (hereinafter "The Defendant DSS", "Defendant DSS, "The DSS", "DSS", "The Department", "The Department Staff", "Department Staff", "The Defendants", "Defendants", "The Defendants' Staff", "Defendants' Staff", "The Staff", "Staff", "The Defendant DHS", "Defendant DHS", "The DHS", "DHS", "The Department", "The Defendant HRA", "Defendant HRA", "The HRA", "HRA") is the legal representative entity of the following agencies:
      i. The City of New York Department of Social Services: is a government agency organized and existing by virtue of the laws of the state of New York & the City of New York. It is currently in charge of oversight & regulation of The Department of Homeless Services, the Human Resource Administration, & the Office of The Ombudsman.
      ii. The City of New York Department of Homeless Services: is a government agency organized and existing by virtue of the laws of the State of New York and a child department within the City of New York's Department of Social Services that is in charge of operations of the City of New York's homeless services including, but not limited to, regulating shelter operators & operations.
      iii. The City of New York Human Resource Administration: is a government agency organized and existing by virtue of the laws of the State of New York and a child department within the City of New York's Department of Social Services that is in charge of operations of the City of New York's social benefit services, including but not limited to regulating administration of EBT in conjunction with the State of New York Office of Temporary and Disability Assistance, & similar social services along with client info.
   b) Defendant, The Salvation Army of Greater New York, (hereinafter "The Salvation Army", "Salvation Army", "SA", "The SA", "The Defendant", "Defendant", "The Defendant Staff", "Defendant Staff", "The Staff", "Staff", "The Shelter Staff", "Shelter Staff", "The Shelter's Staff", "Shelter's Staff") is the facility operator of Kingsboro MICA Men's shelter located at 681 Albany Ave, Brooklyn, New York 10023 in-conjunction with the City of New York's Department of Homeless Services.
   c) Defendant, Grand Central Neighborhood Social Services, (hereinafter "Grand Central", "The Grand Central", "GCNSS", "The GCNSS", "The Defendant", "Defendant", "The Defendant Staff", "Defendant Staff", "The Staff", "Staff", "The Shelter Staff", "Shelter Staff", "The Shelter's Staff", "Shelter's Staff") is the facility operator of the Mainchance Drop-In Center shelter located at 127 E 32nd Street, New York, New York 10016 in-conjunction with the City of New York's Department of Homeless Services.
   d) Defendant, Urban Pathway, (hereinafter "UP", "The UP", "The Defendant", "Defendant", "The Defendant Staff", "Defendant Staff", "The Staff", "Staff", "The Shelter Staff", "Shelter Staff", "The Shelter's Staff", "Shelter's Staff") is the facility operator of the Antonio Olivieri Center shelter located at 257 W 30th Street, New York, New York 10001 in-conjunction with the City of New York's Department of Homeless Services.

### V. Allegations of Facts

26. After begin transferred to an under-facilitated & dangerous "disciplinary shelter" by Defendant DSS, through Defendant DHS, & a couple other parties, The Plaintiff began the formal litigation phrase of his legal endeavors by officially filling a

discrimination complaint against Defendant SA outlining the acts of negligence, harassment, & intimidation he was experiencing at the Kingsboro shelter with the New York State Division of Human Rights (*see Exhibit 7*). Instead of attempting to resolve The Plaintiff's grievances/complaints or even address them The Defendants intensified their campaigns against The Plaintiff and flat out refused The Plaintiff entrance and then did everything in their power to force The Plaintiff outside whenever he would attempt to seek shelter.
   *a)* During The Plaintiff's stay in the Defendant DSS's shelter system he was a client at two different shelters (*see Exhibit 26*) where he was the victim of theft, harassment, & discrimination and after giving The Defendants ample informal and formal notice and time to resolve the complaints, all to no avail, The Defendants felt the need to ratchet up their campaigns against The Plaintiff. In what can only be described, as it seems and is, an attempt to force The Plaintiff into appearing and acting as The Defendants wanted & perceived of him.
   *b)* After getting nowhere and realizing the malicious & blatant nature of The Defendants' Staffs' actions along with the redundant in-house grievance resolution system, which all seemed designed to just waste the complainant's time. The Plaintiff, seeing the writing on the wall, then moved onward to the next phase of his legal endeavors and began the formal commencement of several litigations against all involved parties.
   *c)* On November 13th 2019 (*see Exhibit 7*) The Plaintiff filled a discrimination complaint with the New York State Division of Human Rights outlining the various illegal violations of his rights The Staff at The Defendant SA's shelter had committed against him due to The Defendants' Staffs' ever presetting need to comment & act on their preconceived motions of The Plaintiff's national origin and/or immigration status (*see Exhibits 6, 12, 26, 28*).
      *i.* The Staff at the shelter felt the need to put up a new notice on this day as well, a coincidentally habit of theirs they always did on occasions after The Plaintiff would respond to their threats. (*see Exhibits 5, 10, 11, 23-25*)
   *d)* The following weekend of November 21st - 25th 2019 After returning from work The Shelter Staff decided to refuse The Plaintiff entrance on the basis that he didn't have a pass to be out pass curfew, an internal administrative trick, despite The Plaintiff doing everything The Staff had required of him to do to get issued a pass as well as being issued a pass everyday he worked for the past several weeks up until then. (see *Exhibits 12-21*)
      *i.* It can only be inferred that this is what the staff notes/notices were alluding to (*see Exhibits 5, 10, & 11*).
27. After being forced to spend another weekend outside The Plaintiff went once again to the New York City Office of the Comptroller and filed another claim (*see Exhibit 20*), at that time his third overall and within a week, outlining the refusal of service he was just experiencing. After filing his second complaint against Defendant DSS The Plaintiff's quality of services plummeted, if not already nonexistent at that point, to levels of neglect that border criminal. From refusing The Plaintiff a bed or even rest to going to the point of forcing The Plaintiff out on to the street once again with The Defendants' Staffs knowing all to well The Plaintiff had nowhere to go due to

residing at a homeless shelter.
   a) After filing a notice of claim against The Department The Plaintiff was refused a bed as well as his possessions in an intimidation, instant retaliatory attempt. After that was unsuccessful The Defendants then went onward to attempt to transfer The Plaintiff in the middle of the night with the driver attempting to transfer The Plaintiff to another shelter than the one on the paper after attempting at first to refuse to even provide him with the paper and eventually ending up at The HRA Men's Shelter on the nights of November 25th, 30th and December 1st 2019 (see *Exhibits 16, 20-26*) and would eventually be forced out after being told, for no legitimate reason, he couldn't stay there and would have to return to his assigned shelter which they kept stating was Kingsboro despite The Plaintiff informing them on multiple occasions of the illegal nature of his original transfer to that shelter as well as the malicious nature of The Shelter Staff's multiple, persistent, and perpetual refusal to even provide any services to The Plaintiff, all to which HRA Shelter Staff would brush off & ignore and then turn around and doing the same thing.
   b) After going to the HRA Intake Center on multiple occasions over those couple nights and after attempting to get transferred to an adequate shelter only to be sent back to the same disciplinary shelter he was falsely refused entrance to and/or a bed despite initial having a pass on the night in question when The Plaintiff supposedly missed curfew, an internal administrative trick Shelter Staff use to kick-out "unruly clients".

28. After unfortunately returning to the lackluster service of AirB&B and taking a hiatus from the overall discriminatory service he was receiving from the Defendant's Staff The Plaintiff once again returned on multiple occasions to attempt to resolve the open disputes he had with The Defendants. The Plaintiff even went so far as to go to the DHS headquarters on January 14th 2020 (*see Exhibits 27-29*) and attempting once again to resolve his dispute with The Defendants, all once again to no avail. The Defendant would even continue their campaign a couple days later when once again another Shelter Staff would unreasonably agitate and annoy The Plaintiff just to once again call The Police on The Plaintiff and get them to force him to leave, which The Police would feel the need to comply with (*see Exhibit 30*).
   a) After the unsuccessful visit to the DHS headquarters The Plaintiff would return to the HRA Intake Center and attempt to once again gain a transfer to an adequate shelter to which once again The Plaintiff would be told to return to his official shelter (*see Exhibit 29*) and despite being informed of The Shelter's continued refusal to admit him and of their egregious treatment of him The Staff at HRA felt no need to say nor do anything about it.
   b) After attempting to gain entrance to 3 additional different DSS co-operated shelters all which refused to house The Plaintiff in a refusal of service campaign that was based on nothing else than The Plaintiff's being him due to one Shelter Staff, *Antonio Olivieri Center* located at *257 W 30th Street, New York, New York 10001* refusing him entrance over a video doorbell the moment The Plaintiff pressed the intercom button and even uttered a word and the other, *Mainchance Drop-In Center* located at *120 E 32nd St, New York, New York 10016* and

operated by ***Grand Central Neighborhood Social Services Corporation***, upon sight of The Plaintiff attempting at first to turn him away but restraining from refusing him service after The Plaintiff objected and eventually admitting The Plaintiff and then turning around and calling The Police, despite the current police brutality climate, on The Plaintiff in a flagrant disregard for & endangerment of The Plaintiff's life on a night when the temperature outside was around and below freezing and when The Plaintiff had nowhere else to go other than the freezing cold outside, which seems like their exact desire (*see **Exhibit 26***).

29. From the very moment The Plaintiff began to commence the notification phase of his legal endeavors of seeking adequate & just relief for all the negligible egregious transgressions The Defendants inflicted on The Plaintiff in what can only be described as nothing short of capital corruption, in what seemed like a pointless intimidation tactic to force The Plaintiff into putting an end to this and all of his litigations. From enacting and facilitating an intimidation/retaliation campaign against The Plaintiff to flat out attempting to endanger The Plaintiff by refusing to house him and forcing him onto the streets in what seemed like a last bitch attempt to force The Plaintiff into silence and forgoing all this and other litigation.

### *VI. Exhibits List*

***Exhibit 01:*** *Bed Roll (October 10th 2019)*
***Exhibit 02:*** *Food Roll (October 10th 2019)*
***Exhibit 03:*** *Food Roll Front Page (October 11th 2019)*
***Exhibit 04:*** *Food Roll Floor 3 (October 11th 2019)*
***Exhibit 05:*** *Staff Bed Note To Plaintiff (November 6th 2019)*
***Exhibit 06:*** *Case Manager Job Hindrance (November 7th 2019)*
***Exhibit 07:*** *DHR Complaint Notarization Page (November 13th 2019)*
***Exhibit 08:*** *Nobody Told Me Interview Text Chain*
***Exhibit 09:*** *Nobody Told Me Schedule*
***Exhibit 10:*** *Metro Card Staff Notice (November 13th 2019)*
***Exhibit 11:*** *Kingsboro Staff Notices (November 13th 2019)*
***Exhibit 12:*** *Case Manager Job Hindrance (November 19th 2019)*
***Exhibit 13:*** *Bed Roll (November 21st 2019)*
***Exhibit 14:*** *Bed Waiting List (November 23rd 2019)*
***Exhibit 15:*** *Bed Waiting List (November 25th 2019)*
***Exhibit 16:*** *Transfer Documents (November 26th 2019)*
***Exhibit 17:*** *Bed Roll -- Assigned & Empty (November 27th 2019)*
***Exhibit 18:*** *Bed Roll -- Empty Bed (November 27th 2019)*
***Exhibit 19:*** *Bed Roll -- Issued Passes (November 27th 2019)*
***Exhibit 20:*** *DHR Complaint Notarization Page (November 29th 2019)*
***Exhibit 21:*** *DHR HRA Timing Coincidence (November 30th 2019)*
***Exhibit 22:*** *HRA Bed Pass (November 30th 2019)*
***Exhibit 23:*** *HRA Ombudsman Office Flyer (November 30th 2019)*
***Exhibit 24:*** *HRA Bed Pass & Flyer (December 1st 2019)*
***Exhibit 25:*** *HRA Flyer Ticket (December 1st 2019)*

*Exhibit 26:* DSS Shelter Info (November 30th 2019)
*Exhibit 26.1:* DSS Shelter Info (December 1st 2019)
*Exhibit 26.2:* DSS Shelter Info (January 15th 2019)
*Exhibit 27:* DHS Headquarters Visit (January 14th 2019)
*Exhibit 28:* DHS Headquarters Visitation Card (January 14th 2019)
*Exhibit 29:* DHS HRA Visit (January 15th 2019)
*Exhibit 30:* Mainchance 9-11 Police Call Video Screenshots
*Exhibit 31:* DHS Rules (Client Responsibility)
*Exhibit 32:* DHS Rules (What To Expect)

## VII. Request For Relief

30. Wherefore, The Plaintiff seeks the following reliefs:
    a) Awarding The Plaintiff a total monetary relief of *$541,395*:
        i. Legal Cost: *108,395*
            1. Research / Prep: *107,520*
            2. Print-Outs: *225*
            3. Litigation Cost: *650*
        ii. Compensation: *433,000*
            1. Reckless Endangerment: *100,000*
            2. Emotional Distress: *250,000*
            3. Pain & Suffering: *15,000*
            4. Personal Belongings: *68,000*
    b) A judgment pursuant to 28 U.S.C. §2201 & §1343 that The Defendants violated The Plaintiff's Fifth & Fourteenth Amendments and Civil Rights by depriving The Plaintiff of his liberty and property in blatant willful ignorance of The Plaintiff's multiple objections and in the face of undoubted concert evidence in The Plaintiff's favor due to his protected characteristics.
    c) Admission of Guilt & Statements of Apology from The Defendants.
    d) Such other reliefs as This Court may deem just and proper.

## Notarization

I, **Yaya Jallow**, swear and affirm that I have read the foregoing packet and know the contents thereof: that same is true to the best of my own knowledge, except as to the matter here stated to be alleged upon information, and as to these matters I believe them to be true.

Date: 10/19/2020   Notary
Signature: _____

State of New York
County of New York

Sworn to before me this
19 day of October 2020

Kenneth Cardez
Notary Public, State of New York
Reg No. 04CA6351839
Qualified in New York County
Commission Expires December 12, 2020

Yaya Jallow
*The Plaintiff, pro se*
yjallow96@outlook.com • (718) 200-5369
Mailbox #138, 400 Jay Street, Brooklyn, New York 11201

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
YAYA JALLOW

**DEFENDANTS**
City of New York, SALVATION ARMY OF GREATER NEW YORK, GRAND CENTRAL NEIGHBORHOOD SOCIAL SERVICES, URBAN PATHWAY

(b) County of Residence of First Listed Plaintiff: New York
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: New York
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☒ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| | | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
42 U.S.C. §1983; 28 U.S.C. §1332; 18 U.S.C. §1038;

Brief description of cause:
5th AND 14th AMENDMENT RIGHTS; AMOUNT IN CONTROVERSY; FALSE INFORMATION & HOAXES;

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 541,395.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 10/19/2020

SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____